UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA VANNER
   Plaintiff,        CIVIL ACTION NO.09-12082

 v.            DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF      MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

  This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. Plaintiff filed for disability benefits alleging that she had been disabled since June 10, 2005 due to fibromyalgia, back pain, and problems with her shoulder. Following her initial denial, plaintiff had a hearing before an ALJ at which her non-attorney representative appeared. The ALJ found that plaintiff was not disabled because, despite her impairments and her inability to perform her past relevant work, she could perform a significant number of jobs identified by the vocational expert, that is unskilled sedentary jobs with simple routine tasks. Plaintiff contends that this finding is not supported by substantial evidence, specifically that the ALJ erred in finding plaintiff not fully credible and that the Commissioner failed to meet his burden at Step Five to show that there was other work that plaintiff could perform. Defendant contends otherwise. For the reasons discussed in this report,

it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

At the time of the ALJ's decision, plaintiff was 46 years old (a younger individual). See, 20 CFR 404.1563(c). She has a high school education, some vocational school as a nurses aid, and past relevant work as mail handler/processor. (Tr. 19, 52, 62-67, 260)

**Standard of Review**

The Commissioner's final decision is subject to judicial review under 42 U.S.C. § 405(g), which provides, *inter alia:* "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). A court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Colvin v. Barnhart,* 475 F.3d 727, 729-30 (6th Cir. 2007) (quoting *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997)). If the Commissioner's decision is supported by substantial evidence, the court must defer to that decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003)).

Disability is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). An individual will only be determined to b under a disability if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id.* § 1382c(a)(3)(B).

The ALJ, in determining whether a claimant is disabled, conducts a five-step analysis:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520).

Under the five-step inquiry, the claimant bears the burden of proof through the first four steps, and the Commissioner bears the burden of proof at the final step. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). To prevail at step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity," *id.,* taking into account factors such as age, education, and skills. *Walters,* 127 F.3d at 529.

The issue before the court is whether to affirm the Commissioner's determination. In *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

*Brainard*, 889 F.2d at 681.

**Background**

Plaintiff is divorced and has past relevant work as a mail handler, which is medium work, with frequent standing and lifting up to 25 pounds, and occasional lifting of up to 50 pounds. (Tr. 53, 270)   She has training as nurse's aid. (Tr. 259-260) She worked for the Post Office from

1988 and until June of 2005. Id.  She has pain in her legs; she treated a couple times in 2005 at the Emergency Room. (Tr. 262)   She takes sleeping pills in get through the night. (Tr. 263)   She has difficulty walking and cannot sit for a long time.  At home, she sometimes cooks, washes dishes. (Tr. 266) Sometimes she can't event lift a gallon of milk.  Her boyfriend does almost all the housework.  She left the Post Office on short-term disability but then that ran out and she was turned down for long term disability. (Tr. 268)   She is divorced and receives a disability pension from the Post Office.

The vocational expert testified that plaintiff's past work was semi-skilled medium work with skills transferable to light mail delivery. (Tr. 270) If her testimony were fully credited, she could not work.  If she could perform sedentary work but limited to that which is not more than one or two or three step procedures, and provides for standing/sitting to be alternated at will, she could perform jobs such as packager, sorter, inspector, and bench assembly jobs.  There are about 4000 such jobs regionally and 7000 state-wide. (Tr. 271)

**The Medical Evidence**

As noted by the government, plaintiff has a long-standing history of diffuse body pain. Plaintiff treats with Dr. Kalahasty, MD.[1]. who conducted several objective tests.  Plaintiff's May 10, 2005 nerve conduction study was normal.  In June 14, 2005, Dr. Kalahasty indicated that plaintiff suffered from possible fibromyalgia after noting that plaintiff had tenderness in multiple spots. (Tr. 147) Plaintiff was on Vicodin for pain and she was given an extensive work up for rheumatoid arthritis, lupus, and other types of connective tissue diseases. (Tr. 143, 148-9)

---

[1]This also appears in the records as Dr. Sambas Calahasty. (Eg Tr 158)

A Psychiatric Review Technique was completed by reviewer Rom Driauciunas, Ph.D. (Tr. 84-101) He notes that plaintiff has a "mood disorder due to General Medical Condition." (Tr. 87) Although there are no episodes of decompensation, there are mild restrictions of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 94) None of her impairments meets the listings. She is not significantly limited in any of her mental capacities except for moderate limitations in the ability to understand and remember detailed instructions, carry out such instructions, and maintain attention for a long period of time, and respond appropriately to changes in the work setting. (Tr. 99-100)

Her Physical Residual Functional Capacity Assessment indicates that she could perform light work, lifting 20 pounds occasionally, 10 pounds frequently, and standing/walking 6 of 8 hours, and sitting 6 of 8 hours. She had some limitation in her upper extremities with respect to pushing and pulling. (Tr 103) The impression of the reviewer was fibromyalgia, and an MRI of October 2005 showed mild narrowing with compression, making it difficult for her to lift. Difficulty with standing causing swelling in the legs and feet. (Tr. 103-104) Her reported limitations were deemed partially credible. Id. Plaintiff was limited in her ability to perform fine manipulation with her fingers. (Tr. 105)

Medical records also show that plaintiff was referred to Dr. Ali M. Dagher, MD by Dr. Kalahasty in July 2005. Plaintiff stated that she had been aching all over since 1992. (Tr. 112) Plaintiff reported diffuse body aches, joint pain, and muscle pain. She has morning stiffness which can last for up to three hours. Id. She smokes occasionally and consumes about five bottles of Pepsi a day. Her gait was normal and she could toe and heel walk. There was spasm

in the paraspinal neck muscles and decreased range of movement of the cervical spine and lateral rotation. Straight leg raising was decreased but without radicular symptoms. Id. She had decreased flexion in her back and numerous areas of trigger point tenderness. Her motor power appeared to be "ok." Id. Lab studies were normal; EMG/NCS study was unremarkable; x-rays of knees were normal. The impression was likely fibromyalgia and to rule out an underlying neurological disorder. She was also seen the next month in August, 2005. (Tr. 111) A trial of Cymbalta and low impact exercises was recommended. (Tr. 111, 113)

In September, 2005, Dr. Dagher reports that she saw plaintiff who was on Cymbalta 60 mg per day. In a letter to Dr. Kalahasty, Dr. Dagher notes that plaintiff had not had any relief with the medication. On examination, there was no evidence of inflammatory arthritis. Motor power seemed reduced in the lower extremities; range of motion was not smooth but there was not the typical rigidity. (Tr. 110) Her lab studies showed a normal CPK level at 153; aldolase was 2.6, and C-reative protein was less than 0.1. Id. The impression was osteoarthritis of the hips, fibromyalgia, and nonspecific muscle weakness. Id.

Plaintiff underwent physical therapy in September 2005 through January 2006. In November 2005, she was noted to walking with a significant anatalgic gait. (Tr. 124) The MRI showed a C5-C6 disk problem (Tr. 129)and it was felt that she might benefit from the pain clinic. (Tr. 124-5) She was followed by Dr. Norman Rotter and Dr. Wendy Robertson. (Tr. 125, 127)

In April, 2006, plaintiff was examined by Dr. Guirguis, MD. (Tr. 158-160) Plaintiff reported pain in her legs since 1998, swelling in the hands in the morning, and pain in her neck and arms. (Tr. 158) The impression was fibromyalgia. Gait was without assistance but she

moved slowly. She had no motor or sensory deficits; reflexes were +2 and equal bilaterally. (Tr. 159) She had tender points in her whole body. Digital dexterity was intact. There was no muscle wasting; muscle power was 5/5 in all limbs. Id. Range of motion was within normal limits. Id. There was no muscle weakness. Plaintiff takes Vicodin and Naprosyn, but her condition is not improving. (Tr.160) On the same day, plaintiff underwent a mental status examination. She lives with her ex-husband. She reports low energy, drying spells, and problems with appetite and concentration. (Tr. 166) Plaintiff attends church, does light household chores, but is not able to cook a proper meal. (Tr. 167) Her posture and gait were normal, thought processes well organized, and has low self-esteem. Plaintiff had deficient immediate and recent memory but adequate past memory. (Tr. 167) Information and calculations were adequate; abstract thinking and judgment were likewise adequate. (Tr. 167-168) She was diagnosed with a mood disorder to general medical condition (fibromyalgia) with a GAF of 50. (Tr. 168)

Plaintiff went to the Fibromyalgia and Fatigue Centers. (Tr. 179-190) These records indicate her recorded reports of her symptoms. (Eg Tr. 183) Plaintiff also had lab studies in 2007. (Tr. 191-205) which showed some slightly elevated cholesterol, and were otherwise fairly normal.

Dr. Kalahasty's notes from the Downriver Internists show that plaintiff took Vicodin, Oxycontin, Neurotanin (eg Tr. 221, 222) and a variety of other medications such as Elavil, Tylex, Cymbalta, and others. Dr. Kalahasty wrote "To Whom It May Concern" in November 2005 that plaintiff has Chronic Fatigue Syndrome and Fibromyalgia. She has sharp, shooting pains in the neck as a result of compression based on an MRI of October and she remains unable

to work. He said that she should remain off for six months pending a neurological surgical evaluation. (Tr. 236) Similar letters were written in March 2006 and April 2007 (sometimes Plaintiff is referred to as Patricia Torry). (Tr. 235, 234) There is no cure for her conditions; she is on many medications but they do not control her pain. She cannot sit in one position for more than ten or 15 minutes; must move about frequently to ease the discomfort, and is, in his opinion, permanently and totally disabled. No additional objective tests are referenced and the neurosurgery consult recommended only conservative treatment. (Tr. 234)

**ALJ's Opinion**

In this case, the ALJ determined that claimant carried her burden of proof through the first four steps, and demonstrated that she was "unable to perform any of her past relevant work" under 20 C.F.R. § 404.1565. This court's inquiry is thus limited to whether substantial evidence supports the ALJ's determination at step five of the inquiry--namely, whether substantial evidence supports the ALJ's determination of claimant's RFC, based in part on her determination of plaintiff's credibility, and the availability of jobs in significant numbers that accommodate her limitations.

**Plaintiff's Arguments**

**(1) The ALJ Appropriately Evaluated Plaintiff's Credibility**

*A. Obligation of the ALJ*

Plaintiff argues that she is unable to work because she experienced pain throughout her body as a result of fibromyalgia. The ALJ found that her complaints were not wholly credible because they were not supported by objective diagnostic and clinical evidence and were not consistent with her daily activities. Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain and does not understand the nature of fibromyalgia.

As a general proposition in social security cases, courts find that pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Secretary of HHS*, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. *Houston,* 736 F.2d at 367; *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997); *Villarreal v. Secretary of HHS*, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. *Villarreal*, 818 F.2d at 463 and 464.

In *Duncan v. Secretary of HHS*, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and: (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can

reasonably be expected to give rise to the alleged pain. *Jones v. Secretary of HHS*, 945 F.2d 1365, 1369 (6th Cir. 1991).

The ALJ is "charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." *Bradley v. Sec'y of Health & Hum. Servs.,* 862 F.2d 1224, 1227 (6th Cir.1988). Discretion is "vested in the ALJ to weigh all the evidence." *Id.* On review, "we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones,* 336 F.3d at 476. In reviewing an ALJ's credibility determination, "we are limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record. *Id.* We may not on appeal "try the case *de novo,* nor resolve conflicts in evidence...." *Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir.1987).

*Fibromyalgia*

Plaintiff alleges that her fibromyalgia entitles her to benefits. Both the government and the ALJ could have done a better job of analysis in this area. The ALJ gave short shrift to the diagnosis and the government really does not discuss this circumstance at all in the brief. Nevertheless, the medical evidence seems to lack the findings necessary for fibromyalgia outlined in the cases and in any event, her fibromyalgia does not prevent her from performing the limited sedentary work identified.

Fibromyalgia is not *per se* disabling. *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988). Fibromyalgia is pain in the fibrous tissues, muscles,

tendons, ligaments, and other white connective tissues, frequently affecting the low back, neck, shoulders, and thighs. *See*, The Merck Manual (16th Ed. 1992) pp. 1369. In the earlier edition, fibromyalgia was categorized as "nonarticular rheumatism." Merck Manual (15th Ed.) p. 1271. The manual noted that various locations of the pain may occur and when they occur together they are referred to as muscular rheumatism. Those of the low back (lumbago), the neck (neck spasm), shoulders, thorax (pleurodynia), and thighs (aches and "charley horses") are especially affected. There is no specific histological abnormality. *Kocsis v. Multi-Care Management*, 97 F.3d 876, 879, n. 2 (6th Cir. 1996). The term fibromyalgia has often been interchangeably used with the terms fibromyositis or fibrositis. See *Lisa v. Secretary of Health and Human Services,* 940 F.2d 40, 43 (2d Cir. 1991). However, the absence of cellular inflammation justifies the preferred terminology of fibromyalgia rather than the older terms of fibrositis or fibromyositis. *Kocsis*, 97 F.3d at 878 n. 2. The Seventh Circuit, noting that the symptoms are entirely subjective, has stated that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working but most do not, and the question is whether [plaintiff] is one of the minority." *Sarchet v. Chater*, 78 F.3d 305, 306-7 (7th Cir. 1996).

More recently, our circuit has considered fibromyalgia in several cases. The leading case is *Rogers v. Commissioner of Social Services*, 486 F.3d 234, 244 (6th Cir. 2007). In *Germany-Johnson v. Commissioner of Social Sec*. 313 Fed.Appx. 771, 778, 2008 WL 4791383, 7 (6th Cir. 2008) (unpublished) the court relied on *Rogers* and remanded to the agency with instructions that "the administrative law judge is further directed to evaluate Germany-Johnson's claims under the standard appropriate for claims of fibromyalgia." The court stated that

In general, an "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 416.908. Fibromyalgia, however, can be confirmed as a severe impairment without objective testing. *See Rogers,* 486 F.3d at 243 ("On at least one occasion, we have recognized that fibromyalgia can be a severe impairment that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."). In fact, persons suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston v. Sec'y of Health and Human Serv.,* 854 F.2d 815, 820 (6th Cir.1988). As a result, we have previously concluded that "[t]here are no objective tests which can conclusively confirm the disease." *Id.* at 818. Instead, the standard for diagnosing fibromyalgia in this circuit involves testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. *See Rogers,* 486 F.3d at 244.

As in *Rogers,* the ALJ in this case did not discuss, let alone apply, the correct standard for assessing a diagnosis of fibromyalgia in his decision, instead emphasizing and basing his denial of benefits on "normal" physical findings, *i.e.,* normal muscle strength, normal range of motion, and normal gait. But for obvious reasons, these findings bore little relevance to Dr. Meacham's diagnosis of fibromyalgia. *See Rogers,* 486 F.3d at 245 ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant").

However, in *McGrew v. Commissioner of Social Ser.* 343 Fed. Appx. 26, 33, 2009 WL 2514081, 6 (6th Cir. 2009)(unpublished), the court held that the "ALJ was correct in finding that 'the suggestion that the claimant may have fibromyalgia is not supported by a formal diagnosis showing the requisite number of trigger points as specified by the American College of Rheumatology for giving such a diagnosis.' AR at 18." The court noted that the ALJ "described the formal requirements for a fibromyalgia diagnosis and stated that McGrew's treating

physicians 'relied instead on the claimant's subjective complaints of fatigue and an unspecified number of tender points in the claimant's shoulders and low back.' AR at 18."

In this case, similar findings were noted. The trigger points were not identified but the treating physician merely referred to "multiple tender points." In addition, the consulting rheumatologist found no evidence of any inflammatory arthritis and this was noted by the ALJ. Plaintiff had normal posture and gait and was able to sit comfortably during her consultive psychological interview. Further, although plaintiff has been prescribed and takes many medications without apparent relief, she nonetheless can conduct her daily activities, do light housework, cook twice a week or so, and attend church regularly.

In *Berry v. Commissioner of Social Sec*. 289 Fed.Appx. 54, 56, 2008 WL 3271255, 2 (6th Cir. 2008), the court held that the ALJ may discount a claimant's credibility when there are "contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997). In this case, there is contradiction among the medical reports in the record, and the record contains evidence of plaintiff's ability to perform certain activities. Particularly, the ability to live independently and perform regular household activities belies her claim that she is totally disabled. *See, Walters at* 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). This court must give due weight to the ALJ's credibility determination. "Since credibility, especially with alleged pain, is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.' " *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538

(6th Cir.1981) (quoting *Beavers v. Sec'y of Health, Educ. & Welfare,*577 F.2d 383, 387 (6th Cir.1978)).

**The ALJ Did Not Err at the Step Five Level**

Here, the ALJ considered all the medical evidence and determined that claimant could perform unskilled sedentary work which took into account the restrictions of her treating physicians. She was limited to simple sedentary work with the ability to sit or stand at will. It is the ALJ's place, and not the reviewing court's, to "resolve conflicts in evidence." *Gaffney,* 825 F.2d at 100. Even considering her fibromyalgia, applying the restrictions of her physician, and based on review of the record as a whole, the ALJ's RFC determination and finding based on the vocational expert's testimony regarding the significant number of jobs available are supported by substantial evidence. Thus, the decision should be affirmed.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

> s/Virginia M. Morgan
> Virginia M. Morgan
> United States Magistrate Judge

Dated: June 16, 2010

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 16, 2010.

> s/Jane Johnson
> Case Manager to
> Magistrate Judge Virginia M. Morgan